**NOT FOR PUBLICATION**

RECEIVED

SEP 6 2005

WILLIAM T. WALSH
CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

RUSSELL CUCIAK,

   Plaintiff,

  v.

BOARD OF CHOSEN FREEHOLDERS,
et al.,

   Defendants.

: Civil No. 05-2658 (GEB)
:
: **O P I N I O N**

**APPEARANCES**:

  RUSSELL CUCIAK, Plaintiff, <u>pro se</u>
  # 231248
  Ocean County Jail
  120 Hooper Avenue
  Toms River, New Jersey 08753

**BROWN, JR.**, District Judge

  Plaintiff, Russell Cuciak, confined at the Ocean County Jail in Toms River, New Jersey, at the time this action was submitted for filing, seeks to bring this action <u>in forma pauperis</u> pursuant to 28 U.S.C. § 1915. Based on plaintiff's affidavit of indigence, the Court grants the application to proceed <u>in forma pauperis</u> and directs the Clerk of the Court to file the Complaint without pre-payment of the filing fee.

  Having reviewed the Complaint, to identify cognizable claims pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, the Court concludes that the Complaint should proceed in part.

### I. BACKGROUND

The following factual allegations are taken from the Complaint and are accepted as true for purposes of this review. On or about December 27, 2004, Cuciak believed his life was in danger after receiving threats from a gang member from the "Bloods". As a result of the threats, Cuciak began to have chest pains and was moved to the medical ward for treatment. Cuciak is diagnosed as a schizophrenic and suffers from bipolar disorder.

Cuciak continued to receive death threats in the medical ward and submitted a request form for protective custody. Officer P. McCloud responded to plaintiff's request. Rather than being placed in protective custody, however, Cuciak was moved to North "C" unit, where the threats had initially occurred. Cuciak refused to enter his cell when he saw a "Blood" member.

On January 5, 2005, Cuciak was placed in North "B" unit temporarily. He was forced to sleep on the floor as the third inmate in a two-person cell. The conditions in North "B" unit were dirty, overcrowded, with no laundry and visitation privileges. There is no T.V., and the cells are hot.

Cuciak again requested protective custody on January 25, 2005 and complained of his exposure to violence and his physical and psychological deterioration. He was seen by a psychiatrist in January 2005 for a change in his psychotropic medication.

On February 1, 2005, Cuciak was moved to North "D" unit. At that time, threats against plaintiff were heard by defendant Mastria, and he communicated the problem to defendants, Glen Amirr, Theresa Kaufman, and Thomas Haines, who ordered that Cuciak be placed in North "D" unit despite the threats. When Cuciak refused to enter the cell, Mastria wrote a disciplinary report. Mastria told Cuciak that his protective status was declassified. He also allegedly told plaintiff, "I want to see a fight anyway."

On February 5, 2005, Cuciak was attacked in his cell after lockdown. He sustained injuries to his head and a large laceration on his forehead. Cuciak's request for protective custody was again denied, but he was moved to a medical cell the same day, February 5, 2005.

Cuciak brings this civil rights action against the following defendants: the Board of Chosen Freeholders; Warden Hutler; inmate Chris Savanovich,[1] Officer Mastria; and classification officials, Glenn Amirr, Theresa Kaufman, and Thomas Haines. Plaintiff alleges that these defendants failed to protect him in violation of his Eighth Amendment rights. It also appears that Cuciak raises a conditions of confinement claim based on overcrowded and unsanitary conditions in North "B" unit at the

---

[1] Defendant Savanovich allegedly supplied another inmate with a milk crate which the other inmate used to attack Cuciak.

Ocean County Jail. He seeks compensatory damages in excess of $1 million, and punitive damages in the amount of $50,000.00.

## II. STANDARDS FOR A SUA SPONTE DISMISSAL

The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief, where the plaintiff is proceeding in forma pauperis. 28 U.S.C. § 1915(e)(2)(B).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992). The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions." Id.

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)). The standard for evaluating whether a

complaint is "frivolous" is an objective one. Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981).

Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34 (1992); Alston v. Parker, 363 F.3d 229 (3d Cir. 2004)(complaint that satisfied notice pleading requirement that it contain short, plain statement of the claim, but lacked sufficient detail to function as a guide to discovery, was not required to be dismissed for failure to state a claim; district court should permit a curative amendment before dismissing a complaint, unless an amendment would be futile or inequitable); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

### III.   SECTION 1983 and BIVENS LIABILITY

Plaintiff brings this action pursuant to 42 U.S.C. §§ 1983, alleging violations of his constitutional rights under the Eighth Amendment. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

Local government units and supervisors are not liable under § 1983 solely on a theory of respondeat superior. See City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985); Monell v. Dep't of Soc. Servs. Of City of New York, 436 U.S. 658, 690-91 (1978). "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal

direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted). Accord Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

A § 1983 action brought against a person in his or her official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." Monell, 436 U.S. at 690 n.55. "[I]n an official-capacity action, ... a governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation; thus, in an official capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." Kentucky v. Graham, 473 U.S. 159, 166 (1985) (internal quotation marks and citations omitted).

### IV. ANALYSIS

Plaintiff alleges the following claims: (1) failure to protect, and (2) conditions of confinement in violation of his Eighth Amendment rights.

A. Failure to Protect Claim

Plaintiff asserts that defendants failed to protect him from harm despite warnings and knowledge of gang member threats made against Cuciak. In the context of a failure-to-protect claim, the inmate must show that he is "incarcerated under conditions

posing a substantial risk of harm," Farmer v. Brennan, 511 U.S. 825, 833 (1994), and that the defendant prison officials knew of and disregarded the excessive risk to inmate safety, Id. at 837. "A pervasive risk of harm may not ordinarily be shown by pointing to a single incident or isolated incidents, but it may be established by much less than proof of a reign of violence and terror." Riley v. Jeffes, 777 F.2d 143, 147 (3d Cir. 1985). "Whether ... prison official[s] had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a fact finder may conclude that ... prison official[s] knew of a substantial risk from the very fact that the risk was obvious." Farmer, 511 U.S. at 842. Deliberate indifference is more than a mere lack of ordinary due care, however; it is a state of mind equivalent to a reckless disregard of a known risk of harm. Farmer, 511 U.S. at 834.

Applying Farmer to the instant action, the first question is whether plaintiff has alleged facts showing that he faced a substantial risk of attack or harm. The second question is whether plaintiff has alleged facts from which it could be inferred that defendants were aware of and disregarded that risk.

The allegations in the Complaint state that those defendants knew of the threats against Cuciak and decided to place him in a cell ward with the threatening inmates rather than protective

custody despite their actual knowledge of the threats. In fact, Officer Mastria allegedly heard the threats when he was moving Cuciak to North "D" unit and communicated same to the other defendants, who likewise chose to ignore the danger to plaintiff. These facts, if true, may be sufficient to establish both knowledge of the risk and deliberate indifference. Cuciak's allegations, if true, may also support a claim that the supervisory defendants, Warden Hutler and the Board of Chosen Freeholders, had a policy of not providing a safe and protected environment for inmates like Cuciak, despite the known existence of gang threats in Ocean County Jail. Therefore, the Court is inclined to allow the failure to protect claim, as asserted against the defendants, Board of Chosen Freeholders, Hutler, Mastria, Haines, Kaufman, Amirr and McCloud, to proceed past the screening stage.

However, the Court will dismiss the Complaint in its entirety as against the inmate Chris Savanovich because Savanovich is not a state actor subject to § 1983 liability.

B. Conditions of Confinement Claim

Pretrial detainees retain liberty interests firmly grounded in the Due Process Clause of the Fourteenth Amendment.[2] See

---

[2] It is not clear from the allegations in the Complaint, but it appears that Cuciak may have been a pre-trial detainee during the time that he was confined at Ocean County Jail. Thus, Cuciak's Eighth Amendment claim is more appropriately analyzed under the Fourteenth Amendment's due process standard.

<u>Fuentes v. Wagner</u>, 206 F.3d 335, 341 n.9 (3d Cir.), <u>cert</u>. <u>denied</u>, 531 U.S. 821 (2000). Analysis of whether such a detainee has been deprived of liberty without due process is governed by the standards set out by the Supreme Court in <u>Bell v. Wolfish</u>, 441 U.S. 520 (1979). <u>Fuentes</u>, 206 F.3d at 341-42.

> In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee. For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law. ...
>
> Not every disability imposed during pretrial detention amounts to "punishment" in the constitutional sense, however. Once the government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention. ...
>
> A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]." Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal--if it is arbitrary or purposeless--a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees <u>qua</u> detainees. ...

441 U.S. at 535-39 (citations omitted). The Court further explained that the government has legitimate interests that stem from its need to maintain security and order at the detention facility. "Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial." 441 U.S. at 540. Retribution and deterrence, however, are not legitimate nonpunitive governmental objectives. 441 U.S. at 539 n.20. Nor are grossly exaggerated responses to genuine security considerations. Id. at 539 n.20, 561-62.

In Bell, the Supreme Court held that double-bunking under the circumstances presented in that case did not constitute punishment, and therefore, did not violate the pretrial detainees' due process rights. Id., at 541-43. The Court further noted that no due process violation occurred where pretrial detainees were detained for generally less than 60 days. However, the Court cautioned that: "confining a given number of people in a given amount of space in such a manner as to cause them to endure genuine privation and hardship over an extended period of time might raise serious questions under the Due Process Clause as to whether those conditions amounted to punishment." Id. at 542.

Such circumstances of serious overcrowding in a county jail were presented in <u>Union County Jail Inmates v. DiBuono</u>, 713 F.2d 984 (3d Cir. 1983). There, the Third Circuit established a two-part test in line with <u>Bell</u>:

> "we must ask, first, whether any legitimate purposes are served by these conditions, and second, whether these conditions are rationally related to these purposes. In assessing whether the conditions are reasonably related to the assigned purposes, we must further inquire as to whether these conditions "cause [inmates] to endure [such] genuine privations and hardship over an extended period of time, that the adverse conditions become excessive in relation to the purpose assigned to them."

713 F.2d at 992.

Here, Cuciak alleges that he was forced to sleep on the floor in his cell in North "B" unit for about one month. His only other complaints included allegations that his cell was dirty and he did not have T.V., laundry and visitation privileges for this short period of time. Based on these facts, plaintiff can not demonstrate that he was confined in such a manner so as to cause him to endure genuine privation and hardship for an extended period of time. <u>Bell</u>, 441 U.S. at 542. Thus, the Court finds that the adverse conditions, as alleged, were not intended as punishment because they were so short in duration and not so excessive in nature.[3] Accordingly, the Court will dismiss the conditions claim for failure to state a cognizable § 1983 claim.

---

[3] After this action was filed, Cuciak was released from custody on June 21, 2005.

## V. CONCLUSION

For the reasons stated above, the Court will dismiss plaintiff's conditions of confinement claim, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b)(1). The Court will also dismiss the Complaint in its entirety as against inmate defendant, Chris Savanovich, for failure to state a claim, because Savanovich is not a state actor subject to § 1983 liability. Finally, plaintiff's failure to protect claim as against the remaining defendants will be allowed to proceed past the screening stage. An appropriate Order follows.

_____
GARRETT E. BROWN, JR.
United States District Judge

DATED: August 29, 2005